# SARAH J. COBB
## v.
# SAMUEL B. FOREE.

*Mortgages—Bill to Enjoin Sale of Premises under Power in Trust Deed —Cross-Bill to Foreclose—Evidence as to Payments—Agreement to Compromise—Agency—Telegraph Company as Agent.*

Upon a bill filed to enjoin the sale of mortgaged premises under a power contained in a trust deed, and a cross-bill to foreclose, filed by the owners of the incumbrance, when there was a dispute as to the amount, if any, still unpaid, it is *held:* That the evidence established the fact that an offer of complainant to compromise by the payment of $2,500 had been accepted by telegraph before it was withdrawn.

[Opinion filed September 29, 1890.]

APPEAL from the Circuit Court of Jersey County; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. WISE & DAVIS, for appellant.

Mr. THOS. F. FERNS, for appellee.

PLEASANTS, J.   This is a controversy between the grantee of certain mortgaged premises and the assignee of the mortgage debt, and the question is how much, if any, of said debt remains unpaid.

The mortgage or trust deed was executed in May, 1862, to secure five principal notes of $1,000 each, made by S. B. Johnson to the order of J. Osgood Pierce, payable respectively on the first day of November, in the years 1867, 1868, 1869, 1870, 1871, with interest from maturity, and nine interest notes payable, in order, annually from 1863 to 1871, both inclusive, and bearing interest at ten per cent from their maturity respectively.   In 1867 or 1868 Pierce assigned them all to his brother-in-law, William H. Cobb, who like himself was an old and intimate friend of Johnson.   Appellee, a son of Johnson's wife by a former marriage, acquired a half inter-

est in the mortgaged premises in October, 1870, and the other half in November, 1874. Some time in 1888 Cobb transferred the notes to his wife, the appellant, and in February, 1889, he died.

It appears that the dealings between both the original and succeeding parties in relation to this indebtedness was somewhat loose if not peculiar. Cobb, through his bank at St. Louis, drew on Johnson at Alton for different sums at different times, and raised the money on the drafts, which were sent to the bank at Alton, for collection. Some were paid in full, others only in part, and still others were wholly unpaid. When Johnson was unable to pay his acceptance in full he drew back on Cobb for the deficiency, and when the bank at Alton was notified by the bank at St. Louis that such draft was paid, it would deliver to him his acceptance. It is claimed on the part of appellant that Johnson thus obtained a number of drafts on himself, which were, in fact, unpaid, or paid only in part; and also that he obtained receipts, separately, for some of the sums for which he held such drafts. The same course was pursued with appellee after he acquired the mortgaged premises. No credit, either to Johnson or to appellee, was ever indorsed on any of said mortgage notes, nor were any of said notes surrendered. Appellee obtained from Johnson all his vouchers.

Early in 1888, desiring to dispose of the land, he took all his papers to St. Louis for the purpose of ascertaining how much was then unpaid and removing the incumbrance. Cobb's papers, however, were locked up in the Safe Deposit Company's vault, so that their accounts could not then be compared, and no settlement was made between them. Cobb's health failed about that time, and he went traveling in the hope of recovering it, but died soon after his return. Appellant then sent an agent, Mr. George B. Dodge, to see appellee about the matter, make a settlement and collect the money. They met at Jerseyville, near the mortgaged premises, on the 20th February, 1889, and the interview resulted in the following arrangement: Appellee proposed to pay $2,500, in full settlement of the claim, but having previously

through an agent offered more, Mr. Dodge did not feel authorized to accept the proposition without first consulting appellant. It was therefore agreed that he should return to St. Louis and consult her, and if she accepted it he was to telegraph Mr. M. E. Bagley, a banker at Jerseyville, to that effect—appellee having arranged with Bagley to loan him the money in case she so accepted. This agreement was stated to Bagley by Dodge in the presence of appellee. Dodge returned to St. Louis on the morning of the 21st, and having obtained appellant's consent, telegraphed Bagley that the proposition was accepted. An hour or so afterward he received a telegram from appellee withdrawing it. Bagley, on receipt of Dodge's message, informed appellee of it, and was then told by him that the trade was off, and he would not pay the money. It appears that Dodge's message accepting the proposition was delivered to the telegraph company fifteen minutes before that of appellee withdrawing his offer was so delivered, and more than an hour before it was received at St. Louis.

On the 25th of February appellee filed the bill herein against Dodge, alleging that he was the owner of the notes, and that they had been paid in full, and praying an injunction against the sale of the land under the power contained in the trust deed. Appellant obtained leave of the court to intervene, and filed an answer claiming that she was sole owner of the notes, and denying that they were fully paid; and also a cross-bill to foreclose the trust deed. The cause was referred to the master, who reported, mainly upon the evidence of the vouchers produced, as to the account, that the mortgage debt had been considerably overpaid. Exceptions thereto were overruled, and a decree entered dismissing the cross-bill and making the injunction perpetual.

Appellee testified in his own behalf, explaining the application of the acceptances and receipts he held, while appellant, by the death of her husband, lost the benefit of any counter explanations he, if living, might have made. We deem it unnecessary to consider the evidence in detail, or the judgment of the master and court respecting it, further than to

observe that they ignored appellant's offer of $2,500, and that
in our opinion, the controlling question in the case is whether
they were right in so doing.    On behalf of appellee it is
argued that they were, on the ground that the offer was
revoked before it was accepted; and the fact of such prior
revocation is asserted upon the idea and claim that Bagley was
not the agent of appellee, but of appellant, so that notice of
acceptance to him was not notice to appellee until it was com-
municated to him by Bagley, which was not done until after
the revocation was telegraphed.    It is further claimed that
appellee did not make the telegraph company his agent,
because he did not make his offer by telegraph—the law being
conceded to be that "where one makes an offer by mail or by
telegraph, he constitutes thereby the post office or telegraph
company his agent for its transmission, and (if) the other by
letter accepts and posts his acceptance, or by telegram deliv-
ered to the company, the minds of the parties have met, and
from the instant of mailing the acceptance or delivery of the
accepting telegram, the contract is a valid and binding one;"
citing Bishop on Contracts, enlarged Ed., Sec. 328.

Clearly the appointment of the post office or the telegraph
company as agent in such case is by implication only.    But
here the evidence strongly tends to show—we think it does
show—an express agreement, according to which the accept-
ance of the proposition was to be manifested by telegram
from Dodge to Bagley, and not to appellee through Bagley.
After the agreement had been made Dodge stated it to
Bagley in the presence of appellee, and from the testimony
of Dodge and Bagley, which is uncontradicted, it seems clear
that nothing further remained to be done as between Dodge
or appellant and appellee after thus telegraphing Bagley.
The reason for that arrangement also appears.    Appellee had
arranged with Bagley to loan him the money in case of such
acceptance.    Appellant was expecting to take the body of her
husband East for burial that afternoon or evening, and for
that purpose wanted the money, or enough for that purpose
immediately, and the arrangement was that upon receipt of
the telegram accepting the proposition, Bagley was to tele-
graph the money or $1,000 of it to the Fourth National Bank

of St. Louis to the credit of Dodge for her use. His telegram accordingly was: "Proposition accepted. Telegraph money to Fourth National Bank to my credit." Appellee resided some miles away from Jerseyville. Bagley was not bound to go and find him before sending the credit. The arrangement would have justified him in sending it immediately. He did meet appellee, however, in Jerseyville, and advised him of the acceptance. It may be that Bagley expected to be secured for the loan, but that was a matter between him and appellee only. Mrs. Cobb had nothing further to do, nor had Dodge, after delivering his message of acceptance at the telegraph office, and therefore the case of Haas v. Myers, 111 Ill. 421, cited by counsel, is not in point.

It is true Bagley says he did not regard himself as the agent of appellee. He had received the mortgage notes from the Alton Bank for collection or settlement under a previous offer from appellee, and so considered himself the agent of that bank. But it is immaterial to determine whose agent he was, in a strict technical sense. It is enough that appellee expressly agreed that the acceptance of the proposition should be manifested by telegram to him, as it was manifested. If that was done before the offer was withdrawn, such acceptance would bind appellee, and thus fix the amount due upon the mortgage indebtedness, whatever the vouchers or other evidence might show as to the real state of the account.

We think the master and court below erred in disregarding this evidence of a settlement by compromise, and for that error the decree will be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*