# CHARLESTON.

E. T. BARNUM IRON WORKS v. PRESCOTT CONSTRUCTION COMPANY.

Submitted April 6, 1920. Decided April 13, 1920.

1. CONTRACTS—*Existence From Letters is Question for Court.*
Whether a series of letters or telegrams, or both, constitutes a contract is for the court, not the jury, to determine. (p. 178).

2.  SAME—*Unequivocal Acceptance by Telegram Makes a Complete Contract.*

Where an offer expressly or impliedly requires or authorizes acceptance by wire, the sending of an unequivocal telegram of acceptance by the offeree to the person making the offer constitutes the transaction a completed contract.   (p. 176).

3.  SAME—*Acceptance not Conditional by Suggestion of Slight Modification.*

If an offer is accepted as made, the acceptance is not rendered ambiguous or conditional by uniting with it an expression of hope or suggestion that some unimportant addition or modification be made in its terms.   (p. 177).

Error to Circuit Court, Wood County.

Action by the E. T. Barnum Iron Works against the Prescott Construction Company. Judgment for plaintiff, motion for new trial denied, and defendant brings error.

*Affirmed.*

*J. W. Vandervort, J. L. Wolfe,* and *R. E. Bills,* for plaintiff in error.

*Merrick & Smith,* for defendant in error.

LYNCH, JUDGE:

The vindication of the right of the plaintiff to the judgment, challenged by defendant in the circuit court by motion for new trial and here by writ of error, depends entirely upon the existence of a contract between the parties affirmed by one of them and denied by the other.

Defendant, a corporation engaged in the construction of buildings, contracted with the county court of Jackson County to erect a combination court house and jail at Ripley, the county seat of that county, and to furnish certain material manufactured by plaintiff, consisting of four Bessemer prison steel lattice jail cells, three No. 22 design steel window guards, and two No. 18 design steel lattice entrance doors with vestibule frames provided with rabbet strips for metal cover doors to be locked from top to bottom with an automatic E. T. Barnum Iron Works jump lock bar and secured by a first-grade Yale prison padlock, all complete, painted and ready to erect.   On May 8, 1917, defendant by letter requested plaintiff, a manufacturer of

the articles so specified, "to wire us (defendant) a figure on the jail work and also the ornamental iron as per specification on the Jackson County court house at Ripley, West Va. L. J. Dean, architect, Huntington, West Va. ( Signed)    The Prescott Costruction Co." To this letter plaintiff replied three days later saying, among other things, "that we have not had access to the plans and specifications for this building, but another party sent us a plan of the jail cells and requested us to quote them on the cells made of our standard construction, and also on our No. 79 design balcony railing. We figured that part of the work last January, and if there are no changes we could quote you on that part of the work, as we presume the party that sent it in would have no objections to our doing so, or better, we suggest that you send us a sketch or plan of just what you want us to figure  and we will be glad to quote you. Have you been awarded this contract or is the matter still undecided ?"

Replying to this letter defendant inclosed a "sketch of the jail floor plan and also the full specifications covering this part of the work," and requested plaintiff to "make us a price" on it "complete, but with separate prices on the two different kinds of work," adding :  "The contract for this building is to be let on the 23rd of this month (May), and so make price accordingly and a few days longer as they are very slow with letting a job here.    There is no difference in the plans for last January and the present plans."    Acting upon this information and request and restating in detail the manufactured product specified, plaintiff on May 19th furnished defendant the price therefor "f. o. b. factory with freight allowed to Ripley," and insisted upon prompt acceptance, if at all, "owing to the existing conditions," and promised to "do our utmost to protect you until the 25th inst."    Later being advised by letter of June 19th of defendant's purpose to postpone an order for the cells for 30 days from that date, plaintiff again urged promptness because of other imperative demands upon its factory capacity due to like conditions, and as an inducement agreed to complete the work ready for shipment and hold for instructions and not bill it until shipped, etc.    On the 25th of June defendant wired: "Ac-

cept your proposition made May nineteenth.    Letter follows to-day."

Thus there is disclosed an unconditional offer and an unconditional acceptance of the offer, a concurrence of the minds of the parties upon the subject matter of their negotiations; in other words, an agreement incontestable except for fraud, a consummated contract, whereby plaintiff became legally bound to manufacture and furnish certain definitely prescribed equipment desired by defendant for a stipulated price, for the payment of which defendant also became bound by its acceptance. *Watson* v. *Coast,* 35 W. Va. 463, 470.    The telegram did not reserve and gave no notice of an intention to reserve by the promised letter the right to enlarge, limit, restrict, or in any manner or to any extent modify its acceptance, and as we shall see the letter did not do so either expressly or impliedly. Neither the telegram nor the letter disclosed a purpose or intention other than an unambiguous and positive acceptance of the offer.    As there was no ambiguity either in offer or acceptance the result was a completed contract, and being complete nothing subsequently said or done by either party bound thereby, except by their mutual assent, could affect the right of either of them. *Ozzola* v. *Musolino,* 225 Mass. 512; 1 Williston on Contracts, § 72.    Giving to the letter referred to the most liberal interpretation and weight its language will allow, it does not go to the extent attributed to it by defendant or justify the conclusion sought to be drawn from it.    There is in it no attempt to repudiate, alter or modify the unconditional acceptance effected by the telegram or to revoke it or question the authenticity of the acceptance.    All the letter did that is worthy of notice was to state defendant's "understanding" that the offer included "rivets" and "bucking irons", more as a matter of favor, we think , than as a constituent element of the offer.    As said in *Turner* v. *McCormick,* 56 W. Va. 161, pts. 2 and 3 of the syllabus:  "A mere request by one of the parties thereto for an alteration or modification of a fully accepted proposed contract, which by acceptance has been wrought into a binding contract, * * * relates to the performance of the contract, and is not an element in the making thereof, although written and connected * * * with the acceptance on a single sheet of pa-

per, so as to make of the acceptance and request a compound sentence." See also 1 Williston on Contracts, § 79.

As a matter of fact there are three specific references to rivets in the itemized offer made by plaintiff, but whether "bucking irons" were also included is a question of some doubt, nor does any witness give a definite or understandable explanation of the purpose to be served by them. Whether plaintiff would or would not have furnished these additional articles, had it been permitted to carry into execution the terms of the agreement; we do not know. But if it had done so, it would have been more a matter of grace than of contractual obligation on its part, or as required by any specification furnished for its guidance either in estimating the cost of the jail cells and doors or balcony railing. Nor is there anything contained or reasonably implied in the letter that necessitated an answer, or rendered conditional defendant's unqualified acceptance, or anything that warranted a breach of the contract by either corporation.

What is said applies with equal force and consistency to other letters and messages comprising the correspondence. For to the telegram dated June 26th saying: "Countermand order jail cells until further orders. Report to you later;" and that of June 28th saying: "Cancel order of twenty-fifth. Do not proceed with work"; and the telegram dated June 29th saying: "Everything changed. Cancel order", plaintiff in reply to the first on June 27th said: "We do not understand your telegram as we take it that you want us to furnish the work, and we are holding the material at our source of supply, and we must know right away if you want us to proceed with the order as any delay will likely add to the cost. You most likely know that the window guards and entrance doors to the cell room will have to be built in the walls as they are going up, so it will be advisable to give us all the time you can to get them made up and shipped, for you know there is terrible congestion on the railroads everywhere and it is best to give them ample time for deliveries. Awaiting your early reply so that we will know just what you want us to do, we are," etc. And in reply to the second on June 29th said: "Please explain by telegraph why you wish to cancel. If it has anything to do with specifications or price we will try to adjust it to your satisfaction." And re-

plying to the third on June 30th said: "Your reply is quite indefinite and we will be glad to have you write us fully and explain just what changes have been made and how it will affect the cell work, and it is more than likely that we can use the same material that we are holding up. . It is to your advantage to get the matter adjusted at the earliest possible moment, and we trust you will send drawings (or pencil sketch will do) showing changes, and we will tell you just what we can do." And again on July 11th plaintiff wrote saying: "We assume that this work will be required and the changes will not affect the number of cells, but of course we cannot determine that until you send us the particulars. We want to furnish the work and want to do everything we can to help you get the matter straightened." Instead of indicating uncertainty or doubt as to the existence of a valid and binding contract, these letters, properly construed, indicate plaintiff's recognition of the contract and its insistence upon defendant's permission to perform it, and in addition show a willingness to make slight modifications and adapt itself to the changes, if any, that were made subsequently.

It is scarcely necessary to note the objection predicated upon lack of authority in Glen Franklin, a temporary employee in defendant's office, to bind defendant by the telegram of June 25th. Because the letter of that date written by the general manager when he knew that within less than two hours before Franklin had prepared and sent the message virtually approved and confirmed the acceptance thus concluded.

Rulings upon instructions tendered and requested by the parties and which were either given or refused are so erroneous, it is said, as to necessitate reversal of the judgment and grant of a new trial. In that conclusion we cannot concur. No serious criticism is urged against the instructions propounded to the jury on behalf of plaintiff except Nos. 1 and "A". The conclusion heretofore reached concerning the completed contract effected by acceptance of the offer bears directly upon the merits of No. 1 and shows it to be relevant and appropriate. The question whether certain letters or telegrams, or both, constitute a contract is one to be determined by the court. 13 C. J. 782. Fairly considered "A" is not amenable to criticism. It rightly refused to give weight to defendant's letter of June 25th

for reasons already stated. · The refusal of defendant's instructions Nos. 2, 3, 4 and 5 was not wrongful, but right; considered in connection with the facts proved. Instead of quoting the words, "we will tell you just what we can do," as they appear in plaintiff's letter of June 30th referring to changes in jail cell plans, instruction No. 2, doubtless inadvertently, made the sentence read, "could not tell what it (plaintiff) would do." There is in that letter no language having such import or meaning, as will appear from the reading thereof.

No. 3 is faulty for a similar reason. While not quoting any language used in the same letter, it virtually repeats what is said in No. 2 on the same subject. What has been remarked already regarding rivets and bucking irons applies with equal force to instruction No. 4 and need not be repeated. No. 5 proceeds upon the theory that plaintiff had begun preparations for the performance of the work required for the completion of the jail cells and balcony railing before the consummation of the contract, and that having done so was not entitled to any compensation for such preliminary work. There is in the case no proof justifying such an instruction, so far as we are able to perceive, and for that reason and others heretofore noted it was refused properly.

Judgment affirmed.

*Affirmed.*