## W. H. McKeown, Appellee, v. Western Union Telegraph Company, Appellant.

### Gen. No. 7,952.

1. CONTRACTS—*filing of telegram unconditionally accepting telegraphic offer as completion of contract.* Where an offer is made by telegraph and an unqualified acceptance is dispatched, the contract is complete the moment the acceptance is delivered for transmission.

2. TELEGRAPHS AND TELEPHONES—*sufficiency of evidence as to causal relation between delay in delivery of telegram completing contract and refusal of shipment on delivery thereunder.* In an action to recover damages for a loss sustained by a seller of flour resulting from the refusal of the buyer to accept delivery of the shipment because he failed to receive the seller's telegraphic acceptance of the buyer's offer, evidence held to show that the efficient cause of the seller's loss was either a breach by the buyer

of a valid contract or a decline in the market price of flour while the shipment was delayed in transit, and not the delay in the transmission of the buyer's offer, such delay not having exceeded five hours and the shipment having been loaded immediately following dispatch of the telegram of acceptance.

Appeal by defendant from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1925. Reversed. Opinion filed April 15, 1926.

FRANCIS R. STARK and BROWN, HAY & STEPHENS, for appellant.

CAPPS & WEAVER, for appellee.

MR. JUSTICE CROW delivered the opinion of the court.

This case was tried a second time in the circuit court resulting in a verdict for plaintiff for the sum of $478.67. After motions for new trial and in arrest of judgment were overruled, plaintiff remitted 53 cents, and judgment was rendered for the sum of $478.13, and defendant appealed to this court.

Substantially the declaration filed March 30, 1922, charged that on March 26, 1921, the plaintiff received an offer by Western Union wire from John W. Eckhart & Company, of Chicago, to buy from plaintiff 300 barrels of flour at $7.25 per barrel, with direction to answer by wire; that delivery of that message was unreasonably delayed but that plaintiff delivered to defendant a message accepting said offer by wire immediately upon its receipt; that said acceptance was not delivered to John W. Eckhart & Co.; that plaintiff immediately shipped the said flour not knowing the offer had been delayed and not knowing that his wire of acceptance had not been delivered; that on April 12, John W. Eckhart & Company refused to accept the consignment of flour for the reason it had not received a reply to its offer of March 26, 1921; that plaintiff was under the necessity of selling the flour so consigned at a loss of $654.33 as the price of flour had in

the meantime declined; that all of said loss was sustained solely on account of the negligence and wilful misconduct of defendant as aforesaid, to the damage of plaintiff of $1,000.

A general demurrer to the declaration being overruled, defendant filed the general issue and two special pleas. To the first special plea a demurrer was sustained. No assignment of error having been made on the court's ruling it need not be further noticed.

The second special plea in substance was: By the terms of the contract between plaintiff and defendant for the transmission of the telegram of acceptance it was agreed that defendant would not be liable for damages or statutory penalties in any case where claim was not presented in writing within 60 days after the message was filed with the defendant for transmission and that no complaint in writing was filed with defendant within a period of 60 days from the date when the telegram was filed with defendant company for transmission. Issue was joined on the general traverse to the declaration and on the replication tendering an issue on the second special plea. While the benefit of the special plea is urged we deem it unnecessary to notice appellant's contention with regard to it.

The cause was before this court at the October term, 1923, and is reported in 231 Ill. App. 503. At that time the judgment appealed from was for the same amount as the present judgment. We then held that the evidence of the negligence charged in the declaration was insufficient and incompetent. The judgment was reversed and the cause remanded. There is no substantial difference between the parties as to the facts. There being no controversy as to the integral facts, only a question of law is presented.

The underlying facts are that Eckhart, a flour broker in Chicago, desired to purchase 300 barrels of flour bearing the trade name "Ideal Production," manufactured by plaintiff. Employing the Western

Union Telegraph Company to convey his offer, he delivered to it a message saying so, in these words: "Will book 300 barrels Ideal like sample seven twenty-five plain jutes Chicago wire." From previous dealings between them plaintiff knew the meaning. He says it meant Eckhart offered to buy 300 barrels of Ideal Production flour like the sample furnished, delivered in jute bags at Chicago and would pay $7.25 per barrel. In response to the offer plaintiff delivered to Western Union his acceptance thereof in these words: "All right have booked." They meant to Eckhart and to McKeown, "I accept your offer." Plaintiff immediately shipped the flour to Eckhart in Chicago.

The transaction between the parties was had on Saturday, March 26, 1921. The offer was filed at Chicago for transmission at 10:53 a. m. and received at Griggsville by Western Union at 11:45 a. m., delivered in the afternoon and the acceptance was transmitted at 4:35 p. m. Plaintiff confirmed his acceptance of the telegraphic offer by letter, its date, time of posting, and when, if ever, it came to the hands of Eckhart, are not shown. It is not now material. By plaintiff's own testimony it is shown "there had been a rapid decline in the market while the flour was on the road." This is the only evidence as to the time of decline in price. There is no evidence in the record tending to show that the price of flour declined between the time the offer was sent and the time it was accepted. There is now, as when the case was first here, a total lack of evidence as to when the flour arrived in Chicago or as to the market price when it did arrive. Plaintiff employed Eckhart to dispose of the flour for him. It is only upon the report of sales made by Eckhart, unsupported by testimonial evidence, that the plaintiff established the facts supporting his damages.

Appellant contends that a contract by telegraph for the purchase of flour was complete and that, therefore, plaintiff cannot recover. The statement of the undisputed facts discloses that there was a consummated contract of sale. The offer to purchase and the acceptance dispatched were unqualified and unambiguous. The authorities are in unusual harmony upon the proposition that where an offer is made by telegraph, and an unqualified acceptance is dispatched, the contract is complete the moment the acceptance is delivered for transmission. It is not necessary, as the declaration erroneously assumes, that the acceptance shall be delivered to the offeree. The same principle applies in the formation of contracts by correspondence. Depositing the acceptance in the mail, properly addressed and with sufficient postage, is a completion of the contract though it may be lost, delayed or never received. The principles governing formation of contracts by mail were first laid down and afterward applied by analogy to contracts by telegraph.

"A contract by mail is complete when the latest proposition on the part of one is assented to by the other of the parties. This occurs at the time an unqualified assent to the offer is dropped in the post office properly directed and stamped." 1 Elliott on Contracts, § 44, p. 52. In support of the statement a multitude of cases is cited, among them, *Haas v. Myers,* 111 Ill. 421, and *Chytraus v. Smith,* 141 Ill. 231. On the specific subject of contracts by telegraph, the same author says (section 45) : "There is but little, if any, difference between the rules governing contracts formed by correspondence through the post-office and those governing contracts made through communication by means of the telegraph. It is universally conceded that people may contract by means of telegraphic messages. Contracts thus formed are governed, the same as all other contracts, by general rules

relative to offer and acceptance. A telegram, in order to constitute an offer, must be made with the intention to form a legal obligation or relation. It must not be intended only as a preliminary negotiation. The telegrams sent and received must be final, free from fatal ambiguity or indefiniteness, and sufficiently designate the parties. And the answers must usually be given promptly in order to form a binding contract. In short, they must show all the essential elements of the contract. As in case of offer and acceptance by letter, the contract becomes complete at the time the acceptance is delivered to the telegraph company without reference to the time the telegram is actually received." The last sentence of the text is supported by citation of many decided cases, among them, *Burton v. United States,* 202 U. S. 344, 381 *et seq.,* 56 L. Ed. 1087. The rule is there stated by Mr. Justice Harlan, reinforced by citation of many decided cases and law writers. Williston on Contracts is not at hand. But in section 93 of the Supporting Treatise written by him in support of the Restatement of the law of contracts, he states the rule as to contracts by correspondence, as stated by Elliott, citing a great many cases. In section 94 he says: "By analogy to the law governing contracts by mail, it is held that a contract by telegraph may be completed by delivering a telegraphic dispatch of acceptance for transmission at the receiving office of the telegraph company"; citing cases, among which are *Haas v. Myers, supra,* and *Cobb v. Force,* 38 Ill. App. 255. This court in the latter case held that an oral offer of compromise and settlement of a claim, which by agreement was to be accepted by telegraph, was duly accepted by the transmission of the telegram to that effect. After unconditional acceptance had been delivered to the telegraph company it was followed by another withdrawing acceptance. It was held the withdrawal was ineffectual,

the acceptance being complete, though not received when the second was sent.

A careful consideration of all the competent evidence in this case fails to disclose, if that were necessary, that as matter of fact Eckhart did not receive the telegram of acceptance. As shown by the authorities it would be immaterial whether he actually received it or not, so far as the consummation of the contract was involved. The only evidence as to its non-delivery was that of Kahnert, a buyer for Eckhart in Chicago. He was in the office and says that no such telegram as that sent by plaintiff came to him. He was not an officer of Eckhart and Company at that time. He testified: "To my knowledge no telegram was received by John W. Eckhart & Company. As to whether or not any other employee received any telegram from Pike Mills, that is only a matter of hearsay with me, what they told me about it." Asked whether, if such telegram had been received, he would have known about it, he answered: "No, only when it has been given to me either by the stenographer, bookkeeper or Mr. Eckhart himself, whoever has taken it at the time I was not there. All these telegrams go down to that desk. They are handed to me."—Question: "All such telegrams?"—Answer: "Yes."— Objection to all this testimony was overruled. On cross-examination he said: "All I really know about it is that no such telegram ever came to my notice."— Question: "To say that no such telegram was ever received by John W. Eckhart you would have to say that based upon what other employees in the office have told you?"—Answer: "The stenographer, should she take it, I say yes, it would depend on that." A motion to strike this testimony was denied. All of this evidence was irrelevant and incompetent. Objections made should have been sustained and the motion to strike it should have been allowed.

We are of opinion that the evidence does not show that the delay in the delivery of the offer or of the transmission of its acceptance was the proximate cause of plaintiff's damage, granting there was delay and that he sustained damage. The acceptance sent at 4:35 p. m. on Saturday did not reach Eckhart until Monday, their office being closed. But plaintiff immediately on receipt of the offer and dispatch of acceptance began loading the flour for shipment. This he had a right to do, for there was nothing requiring further word from Eckhart, the contract being complete. It was shipped, but when it left Griggsville, or when it reached Chicago, does not appear. He testified "there had been a rapid decline in the market while the flour was on the road." It is clear therefore that a sudden decline in the price after acceptance, or delay in transportation of the flour during which the decline occurred, was the efficient cause of plaintiff's loss. Suppose that the offer had reached plaintiff in 30 minutes after its delivery to defendant, a reasonable time as contended by plaintiff, and that the acceptance had reached Eckhart in 40 minutes thereafter—allowing ten minutes to write it,—and that the shipment had been started that afternoon, when it arrived at its destination the consignee, though the price had declined, would be liable nevertheless for the contract price. Plaintiff having charged the negligence found in the declaration in this case must show by the evidence not only the decline in price after the telegrams were sent, but he must go further and show by the preponderance of the evidence upon his contention that his loss was proximately occasioned by delay in their delivery. The burden of proof was on him to establish not only the result complained of, but to establish the causal condition charged in his declaration and that it was the efficient cause of his loss. This is elementary. We think he has not sustained this obligation. While it would not necessarily

be a defense to the action that some one else contributed to plaintiff's loss, if more than one party caused it, yet if loss was occasioned as here, by vendee's breach of a valid contract to pay the agreed purchase price, or by a decline in price while the flour was in transit, the necessary element of tortious violation of legal duty charged against defendant and the proximate consequences are not made out. That alleged violation was not the efficient cause of plaintiff's loss. *Seith v. Commonwealth Electric Co.,* 241 Ill. 252, 260.

Upon the undisputed facts and the law applicable to them, we are of the opinion plaintiff cannot maintain his action, and the judgment of the circuit court is therefore reversed.

*Judgment reversed.*