## MYRIN v. KONOW
(No. 1762; September 13, 1932; 14 Pac. (2d) 209)

For the plaintiff in error there was a brief and an oral argument by *A. C. Allen,* of Riverton, Wyoming.

For the defendant in error the cause was submitted on the brief of *G. H. Paul,* of Riverton, Wyoming.

**524**

BLUME, Justice.

This is an action by Magnus Konow against H. A. W. Myrin. Judgment was rendered for the plaintiff and the defendant brings this case here by petition in error. The case, however, must be determined upon the errors appearing upon the record proper, since no bill of exceptions has been filed in the case.

1. Two assignments of error relate to the refusal of the court to suppress the deposition of the plaintiff, upon the ground that it shows on its face that it was not taken in accordance with the statutes of this state; that it appears that no notice of the taking of the deposition was given; that no copies of the interrogatories were filed or served upon the defendant prior to the taking of the deposition. The claim that no notice of the taking of the deposition was served upon the defendant appears to have

been waived in the argument, and the main point relied upon is that instead of taking the deposition upon notice a special commission should have been issued to the party before whom it was taken, since it was to be taken in a foreign country. These assignments of error cannot be considered herein. A motion to suppress a deposition is not part of the record proper, and cannot be considered in the absence, as here, of a bill of exceptions. Rock Island Implement Co. v. Sloan & Corbin, 98 Mo. App. 489, 72 S. W. 728; see 4 C. J. 130. Nor is the action of the court on the motion shown; if any action was taken thereon, it was during the course of trial, and these proceedings are not, in the absence of a bill of exceptions, before us. For aught that appears in the record proper, the deposition may finally have been admitted without objection, or even by agreement of the parties. Furthermore, while the judgment rendered shows that the deposition was read during the trial, it is not disclosed thereby that it was the only evidence introduced on behalf of the plaintiff. It does not appear what, if anything, was shown thereby. The evidence, whatever its nature, contained in the deposition may have been an insignificant part of the evidence introduced on behalf of the plaintiff, and hence even if the admission thereof was in fact erroneous, it does not appear that it was prejudicial, and this, we think, should appear. Crossland v. Hart, (Tex. Civ. App.) 234 S. W. 558; Arizona & N. M. Ry. Co. v. Clark, (C. C. A.) 207 Fed. 817; Mundt v. Bank, 35 Utah 90, 99 Pac. 454, 136 A. S. R. 1023; see 4 C. J. 150. In the last cited case it was held that where there was a trial to the court, and all the evidence heard is not certified on appeal, the admission of a deposition in evidence is not reviewable, since the court may have disregarded it and based its findings and conclusions on other evidence.

2. The first and the fourth errors alleged in the petition in error are substantially the same, namely, that the

petition filed in the cause fails to state facts sufficient to constitute a cause of action. The allegations in the petition are in substance as follows:

That the plaintiff on March 1, 1919, was the owner of a certain lot of stock in the Parker Supply Company; that the defendant also was a stockholder in the same company; that defendant desired to purchase plaintiff's stock, consisting of common and preferred; that negotiations were entered into between the plaintiff and the defendant; that defendant purchased plaintiff's stock for the sum of $25,000; that the purchase and sale was made through cablegrams confirmed by letters; that the first cablegram, addressed to Magnus Konow, the plaintiff, was as follows: "Parker needing considerable more money before arranging this before sailing I want option 9 months purchase all your present holdings Parker Supply Company at net price 25000 dollars cable." That on receipt of this cablegram by plaintiff from the defendant the plaintiff immediately cabled to the defendant as follows: "Willing sell my holdings Parker 25000 dollars paid before March first 1920 telegraph." That defendant on receiving such cablegram from plaintiff cabled the plaintiff as follows: "Buying your holdings Parker at 25000 dollars net if you accept payment half before end February half before end August 1920 telegraph." That on receipt of said cablegram by the plaintiff from the defendant, the plaintiff sent a cablegram to the defendant reading as follows: "Accept your bid my holdings Parker." That plaintiff and defendant thereafter respectively confirmed the purchase and sale of the stock aforesaid; that defendant's letter to the plaintiff is as follows:

New York, June 23, 1919

"Mr. Magnus Konow,
Konengsgate 10,
Kristiana, Norway.
My dear Magnus:
    I received today your cable—
    'accept your bid my holdings Parker'—It is therefore understood that I have taken over all of your common stock nominally $12,500.00, and preferred stock nominally $7,800, at the net price of $25,000, to be paid $12,500 be-

fore the 1st of March, and $12,500 before the first of September, 1920.

The work at the Parker Supply Co. has not yet shown any results. The machinery was in bad shape, new dies had to be made, etc., etc. The $50,000, the majority of which I put in recently has not sufficed to bring the plant into working shape. More money is needed and as I am about to make a large manufacturing contract with an English concern, still more money will have to be invested. I have had to give quite a considerable time and attention to matters over at the plant and I did not feel satisfied when having only 25% of the stock. On the other hand, you could not expect any return from your money during next time to come and the price I offered you is giving you a fair profit on your investment. So I am sure that this arrangement is altogether satisfactory to you.

(signed)   H. A. W. Myrin.''

That plaintiff's letter to the defendant is as follows:

June 20, 1919

''Mr. H. A. W. Myrin,
c/o Sun Co.,
Philadelphia.
Dear Myrin,

I refer to telegrams exchanged regarding the sale of my holdings in Parker Supply Company, New York, and confirm herewith to have sold you my holdings, consisting of ordinary stock and preference shares, in Parker Supply Company, all deposited in Scandinavian Trust Company, New York, for the net price of $25,000.00, to be paid cash, half before end of February, 1920, next half before end of August, 1920.

I will instruct Scandinavian Trust Company to hold this stock at your disposal, so when you pay the first half, you will get their receipt for payment on account of this stock and on paying the second half, they will deliver you all the shares deposited there and trust this arrangement will be satisfactory to you.

(signed)   Magnus Konow.''

That plaintiff deposited the stock so sold to the defendant in the Scandinavian Trust Company in New York

City with instructions to deliver the stock to the defendant upon the payment of the purchase price as agreed on. That on numerous occasions since the date of the agreement represented by the cablegrams, the defendant made numerous promises by telegrams and by letters to plaintiff that he would pay the money agreed to be paid for the stock; that plaintiff, relying upon these several promises of defendant, left the stock in the Scandinavian Trust Company for the defendant; that thereafter the stock depreciated in value so that plaintiff was unable to sell it for the full price agreed on, and that in December, 1921, plaintiff, after notifying the defendant, sold the stock to the best advantage for the sum of $5000, giving the defendant credit for this sum. Wherefore plaintiff prays judgment for the sum of $20,000, the remainder of the purchase price.

Counsel for the defendant claims that the correspondence between the parties in this action did not create a contract. It will be noted that the last cablegram above mentioned was an unconditional acceptance of the offer made by the plaintiff. It is said in the case of McKeown v. W. U. Telegraph Co., 240 Ill. App. 559, 564, quoting from Elliott on Contracts, as follows:

''A telegram, in order to constitute an offer, must be made with the intention to form a legal obligation or relation. It must not be intended only as a preliminary negotiation. The telegrams sent and received must be final, free from fatal ambiguity or indefiniteness, and sufficiently designate the parties. And the answers must usually be given promptly in order to form a binding contract. In short, they must show all the essential elements of the contract. As in case of offer and acceptance by letter, the contract becomes complete at the time the acceptance is delivered to the telegraph company without reference to the time the telegram is actually received.''.

In the case of Kenedy Merc. Co. v. W. U. Tel. Co., (Tex. Civ. App.) 167 S. W. 1094, it was said:

"It is well-settled law in this state that, where an offer is submitted by letter, an acceptance is conclusive and binding when a letter is deposited in the post office accepting same. The delivery to the one making the offer is not the test; for when the offer is submitted in that way it is equivalent to an invitation to accept by the same means, and when the acceptance is delivered to the agency chosen by the one making the offer the contract is complete. And so, where the offer is by telegram, and the answer is by the same means, the contract is then complete."

Counsel for the defendant, however, claims that the letters written by the parties must be construed in connection with the cablegrams; that the letter of June 20, 1919, written by the plaintiff to the defendant, modifies the cablegram of unconditional acceptance sent previously, in that the stock was to be delivered, and the defendant was to pay the sums due, at the Scandinavian Trust Company in New York, and it is argued that defendant was not compelled to accept that modification, and that he in fact never consented thereto. Assuming, without deciding, that the letter of June 20 attempted to modify the unconditional acceptance in a matter of substance, it becomes important to determine as to whether or not it should be construed in connection with the cablegram. Page on Contracts, Sec. 183, states as follows:

"After the contract is made, new terms cannot be added by either party without the consent of the other. If after acceptance the acceptor insists on a modification of the original contract in which the offeror does not acquiesce, such insistence cannot avoid the contract. Hence, the acceptor can subsequently enforce the original contract in the absence of facts to create an estoppel."

In Williston on Contracts, Sec. 72, it is said:

"But if there has been unqualified acceptance the contract is complete and its binding force cannot be affected by subsequent modifications unless they amount to a mutual agreement to rescind."

And in a note he states that this principle qualifies the statement sometimes made that the whole of a continuous correspondence must be considered. See also on this point the case of E. T. Barnum Iron Works v. Prescott Construction Company, 86 W. Va. 173, 102 S. E. 860. The case of Williams v. A. C. Burdick & Co., 63 Or. 41, 125 Pac. 844, 846, 126 Pac. 603, is a case closely in point herein and seems to dispose of the contention made by counsel for the defendant, for in that case it was held that where there was an unconditional acceptance by telegram, a letter thereafter written could not be construed in connection therewith. In that case the court said as follows:

"In order to protect the rights of a party who has, by letter or telegram, signified his acceptance of an offer, the means of transmitting the assent is held to be the representative of the other party, so that when the letter or message, properly addressed, with charges or postage prepaid, is delivered to the agent, so as to entitle it to be sent forward, the minds of the contracting parties have met, and an agreement is effected. 7 Am. & Eng. Ency. Law (2nd Ed.) 135; 9 Cyc. 295; Tayloe v. Merchants' Fire Insurance Co., 9 How. 390, 13 L. Ed. 187. Where the United States Post Office Department and a telegraph company are thus treated as the agents of the party making the offer, fair dealing demands that, unless a telegram expressly refers to a contemporaneously written letter for further details, or by way of explanation, so as necessarily to impart notice and to require a delivery of the letter before the party to whom it is addressed can safely act upon the telegram, the message and the letter should not be construed in *pari materia*. Any other rule might impose damages upon the party receiving a telegram containing an unqualified acceptance of an offer for relying upon the information thus obtained, since by doing so he

might incur obligations to other parties in respect to the subject-matter of the contract that would be burdensome; or, if he could not act upon the telegram until sufficient time had elapsed to enable the delivery of the letter qualifying the acceptance stated in the telegram, needless delay in the transaction of business would inevitably ensue. In the case at bar, the telegram did not make such express reference to the letter as necessarily to constitute the latter a part of the former, or to impart notice. No error was committed by the trial court in refusing to interpret the telegram and the letter as parts of the same affair.''

The cablegram of unconditional acceptance in this case made no reference to any letter. The letter of June 20, written as it was in Norway, and sent to the United States, could not have been received by the defendant for a number of days after the receipt of the cablegram. Under the foregoing authorities, accordingly, the contract was complete when the cablegram of unconditional acceptance was sent, and the letter of June 20 cannot be held to have affected it. Even if this, however, were not true, still we think that the contention of counsel for the defendant herein could not be maintained, for, as noted, the petition in this case states that subsequent to the sending of the cablegrams above mentioned the defendant, on numerous occasions, made promises by telegrams and by letters to pay the plaintiff the price agreed on as above mentioned. Hence, it would seem, that if the letter of June 20, 1919, in fact modified the unconditional acceptance, the defendant, by these promises so made, accepted the modification.

It seems to be further contended that the petition herein fails to show that the plaintiff sustained any damage, because there is no allegation in the petition of special damages, and that under the law it will be presumed that the stock was sold for its full value and that the plaintiff

had not been damaged. We find no merit in this contention, for the petition alleges that the stock depreciated in value and that it was sold after notification to the defendant for the best price obtainable, namely, for the sum of $5000. Hence it could in no event be presumed that the stock was sold by the plaintiff for the price agreed to be paid by the defendant.

We find, accordingly, no error in the record, and the judgment of the trial court must be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.